Nott, J.
delivered the opinion of the Court.
This case presents three questions for the consideration of the Court.
1. Whether sales at auction are within the statute of 29 Charles II. entitled, An act for the prevention of frauds and perjuries.
2. If they are, whether a memorandum by the vendue master at the time, is such a note or memorandum in writing as will take the case out of the statute ?
3. If it is, whether the testimony of the vendue master, proving that such a memorandum was *72 made, and the contents of it, is sufficient to authorize the plaintiff to recover, or whether the Oi’iginal memorandum must be produced ?
Charleston,
May, 1817.
The 17th section of the statute of frauds and perjuries, P. L. 84, declares that “ no contract for the sale of any goods, wares and merchandises, for the price of ten pounds sterling, or upwards, shall be allowed to be good, except the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged by such contract, or their agents thereunto lawfully authorized.” The words of the statute appear to me to embrace all contracts for the sale of goods, wares and merchandises, and I can see no reason for making sales at auction an exception from its operation. The case of Simon v. Motiros (3 Burrow, 1921, and 1 W. Blackstone, 599,) does not decide the question. The Judges say they are inclined to think sales at auction are not within the statute, but if they are, that there was a sufficient memorandum in writing to charge the party in that , case, and it went off on that ground. The reason for the opinion thrown out by the Judges is, because sales at auction are usually effected in the presence of a great number of persons; a reason from whence I should draw a very different conclusion. The persons present frequently *73 constitute a tumultuous crowd; the sales are generally conducted in a manner that affords the least possible opportunity for deliberation; the crier passes rapidly from one article to another; no person present takes an interest in any thing except what regards himself, and that no longer than while the article is immediately under the hammer; and although five hundred might be present, one probably could not be found, not even the auctioneer himself, who could recollect the price or purchaser of any particular article two hours after it was knocked off! The effect of the other cases relied on is rather to show what is a sufficient memorandum to take a case-out of the statute, than to show what cases come within it; and very well authorize the conclusion, that without such note or memorandum the contract would have been held void. But the* auctioneer being the agent for both parties, a note or memorandum in writing made by him is. sufficient to charge the party. This principle is, not only supported by the words of the statute,, but it is so well settled by numerous adjudged cases, that it ought not now to be drawn into., litigation, (Buller, 280, Peake, 232, 7 East, 558, 3 Johnson, 399.) Whether the memorandum made in this case was sufficient for that purpose, cannot now be determined, because it was not before the Court. On the 3d point, the evidence was as follows: The auctioneer produced a book, containing a memorandum of the sale which was *74 proved by himself. This was supposed when first offered, to be the original entry, made at the time of sale; but in the course of examination it turned out to be only a copy. An objection was then made to its admission, which was sustained by the Court; the original was called for, but was not produced: the Court instructed the Jury, that this evidence was insufficient to enable the plaintiff to recover; they disregarded this direction and found a verdict for the plaintiff.
I still think the verdict was wrong. The first rule of evidence is, that the best the nature of the case will admit of must be produced. And the most familiár example put by way of illustration is, that where there is a written contract, the original must be produced, and its place cannot be supplied by a copy or parole evidence of its contents. The original book being the highest in this case, ought to have been produced : the case from I Espinasse, 270, where it was held that if a merchant’s clerk could swear to the delivery of articles from recollection, the books need not be produced, is not in point.
A merchant’s books when kept by himself, were not, by the rules of the common law, evidence of his demand; they are only allowed now from necessity, and certainly do not preclude the higher evidence required by the' common law, to wit, the testimony of a third and disinterested person, who delivered the articles: but in the case under consideration, the statute de *75 dares that nothing short of a note or memorandum in writing, shall make the party liable; and . the common law then steps in and says, that on a trial for the same, the original must be duced. The motion for a new trial therefore must be granted.
Johnson and Cheves, J. concurred.
Colcock, J.
In this case I consider the third ground as the most important, and before that is considered I deem it necessary to decide whether this is a case which is embraced in the statute of frauds. The manifest object of that statute was to prevent imposition by pretended contracts, supported by perjury, and of course it has more immediate relation to such as are made in private, and often supported by the testimony of a single witness. Sales at auction occurring for the most part in large and populous cities, are, at all times, and in all places attended by a great concourse of persons whose immediate attention is drawn to the various contracts which are there made by the competition which usually exists, and are not liable to any of the mischiefs intended to be remedied by the state of frauds; and this opinion is not only supported by reason, but by authority. In the case of Simons vs. Motevos, reported in 3 Burrows, 1921, the Court in? dined to think “ that buying and selling at auc-. tions was not within the statute of fraudsand in a more full report of the same case in 1 vol. of Wm. Blackst. Rep. 599, the reasons are stated by the Judges. Lord Mansfield says, “ they *76 (that is, sales at auction) certainly existed in England, and in all other countries, at the date of this statute. Is it not, therefore, fair to conclude that if it was intended to comprehend them, that they would have been mentioned in the statute ? And, he adds, “ according to the inclination of my present opinion, auctions in general are not within the statute.”
Wilmot, Justice, says, “it may be a great question, whether sales at auction are within the statute. They were certainly not meant by the act which was to extend to the mischiefs created by private and clandestine sales. Had the statute of frauds been always carried into execution according to the letter, it would have done ten times more mischief than it has done goodand' here I remark that the case now before us is, in ■my opinion, a strong instance of the truth of this observation. “ By protecting; rather than preventing frauds, I therefore incline to think,” says this Judge, “ that sales by auction, openly transacted before five hundred people, are not within the statute:” and Justice Yates says, “I much doubtwhether the contract was within the statute of frauds.” Now if the case was not embraced in the statute of frauds, the evidence necessary to support the action was such as Would be required by the rules of the common law, and such, I think, was produced. But it was said that late cases, and some were produced, show that this is not the established doctrine. Be it so: it is then open; Í am free from the *77 shackles of authority, and shall exercise my own judgment; in doing which I shall make every exertion to mete out justice, and that, the justice of this case is with the plaintiff cannot admit of a doubt. The defendant makes the purchase while the water was yet dropping from the bags, and then states as a ground, that there was concealment in not stating that they had been wet with salt water. If the fact be true, that cotton is not more injured by salt than by fresh water, did not the condition of the cotton manifest that the injury was recent, and can it be supposed that any man of common sense would be ignorant that the salt water runs up our rivers for some distance ? Does not the law on such an occasion require that men should exercise the powers of mind which all possess ? I would not be understood as saying that the justice of every particular case must be bought at the expense of those general rules which are indispensably necessary in the conduct of human affairs; but that where the literal construction of statutes produced manifest injustice, that I would always be governed by its spirit and meaning, admitting that the rule be not proper to exclude sales at auction from the operation of the statute, I am against the new trial on other grounds. This particular case cannot be within its operation, because the defendant acknowledges the contract; When applied to for payment, what was his language ? «If an abatement be made, I will. *78 take the cotton.” This, I conceive, was as much as to say, < I did make the purchase, but I gave too much.’ Where a man acknowledges the - contract, it is certainly not a case within the statute; and this Lord Mansfield expressly says in the case before referred to. (1. Blackst. Rep. 600.) Speaking of exceptions to the statute, he says, “ For instance, where a man admits the contract to have been made, it is out of the statute.” Again, I will suppose the case to be within the statute, yet I think it sufficiently proven. It is admitted on all hands that the auctioneer is in such cases the agent of both parties, and that considered in this light, his entry is a memorandum in writing, which will take a case out of the statute. There it was decided that the original entry made by him must be produced; but this I think contrary to the first rule of evidence, which requires the best evidence the nature of the case admits. Now surely the vendue master himself is better evidence than his book. He knew that the plaintiff bought the cotton, and that a memorandum was made of the purchase, according to the usage of the vendue master. He had a copy in his hands, which was perhaps to refresh his memory, and which might have been given not as of itself evidence, but as a statement of his testimony. If the vendue master had not been present, then I concede that his original entry should have been produced. So in relation to merchants, (an analogy which I *79 conceive to be very strong,) if he who delivers^ the goods be present, it is better evidence than the books; and the book is no more than a memorandum to keep alive his recollection. 1 remark, in some of the later cases, mention made of the delivery of a sale-note being considered as sufficient to take the case out of the statute. What these are is not very clear; they could not be notes of hand for the payment of the money, I presume. In the case of Recker vs. Camier, 1 Esp. 105, these sale-notes contain the price and quantity of the articles sold, and that one of them was usually given to the buyer, and the other to the seller. Now it would appear from this that they are nothing more than a mere account of the sales, such as was offered to the defendant in this case; and that upon this ground it may be said the case was taken out of the statute. Upon the whole, I am against a new trial.
Mr. Kennedy for the motion.
Mr. Lance, contra.
Bay, J. I concur with my brother Colcock.